UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| KEON LIPSCOMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25-cv-01257-MMM |
| | ) | |
| MOLINERO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MERIT REVIEW ORDER

Plaintiff proceeds pro se from his incarceration at Joliet Treatment Center and pursues claims of cruel and unusual punishment in violation of the Eighth Amendment. Specifically he pursues claims related to his treatment by Major Brown and Lieutenant Molinero while Plaintiff was in prison at Pontiac Correctional Center.

A. Merit Review

**Legal standard.** The case is before the Court for a merit review of Plaintiff's Complaint. The Court must "screen" Plaintiff's complaint and identify and dismiss any legally insufficient claim. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**Facts alleged.** Plaintiff names as Defendants Lieutenant Molinero and Major Brown.

Plaintiff suffers from pain and several injuries in his right shoulder. He brought his medical issues to Dr. Alford, the physician at Pontiac. Plaintiff informed Dr. Alford that he was suffering shoulder pain and that when officers cuff him behind his back it causes excruciating right shoulder pain. Dr. Alford observed Plaintiff's right shoulder and scheduled Plaintiff for an appointment with physicians at St. James Hospital in Pontiac for right shoulder tests. On receipt of the test results, Dr. Alford told Plaintiff that he had three different injuries in his right shoulder and that being handcuffed behind his back would cause pain and exacerbate his injuries. Dr. Alford said a permit would be needed to ensure that the pain and injuries did not occur. Dr. Alford then prescribed Plaintiff a medical permit and ordered that Plaintiff be restrained with a waist chain with his hands at his sides instead of behind his back. Warden Mindi Nurse approved the permit. The permit was issued in October 2024.

Defendants in this suit refused to honor Dr. Alford's permit, telling Plaintiff he was a troublemaker. Plaintiff began filing grievances to enforce the permit.

On around November 10 Defendants told Plaintiff they did not care about his pain and would not allow him to wear the waist chain.

On around January 15 (Plaintiff writes 2024, but may mean 2025 given the other dates in the pleading) Defendants told Plaintiff they hated him, they believe he deserves to suffer, and that they don't care who wrote what, they were not letting him wear the waist chains, that it was Major Brown's Cell House and he will not honor the permit.

Days later Defendant Molinero told Plaintiff he deserves to die and if Plaintiff learns to shut the fuck up, he may allow him to wear the waist chain. Plaintiff was told he could not wear the waist chain when he went to group, when he requested a crisis team, or when he went to see a nurse. Plaintiff is seriously mentally ill.

Such incidents continued to occur. After the permit had been in effect for six months, Dr. Alford renewed it. Warden Nurse again approved the permit.

The only time Plaintiff's permit was honored was when rookie officers or "straight officers" who said they did not want any part of the B.S. that Defendants had going on with Plaintiff.

On June 18, 2025, Plaintiff went to group and asked to use his waist chain. Molinero told Plaintiff, "You can die for all I care, no you cannot wear your belt." Plaintiff was left in handcuffs behind his back for four hours and was in so much pain that he was in tears and began kicking the door, a Lieutenant (unclear if it was Molinero) came, saw Plaintiff's condition, noted Plaintiff was in tears, and said Plaintiff would never see the waist chain and was wasting his time.

Plaintiff wrote many grievances regarding this issue. He received responses back on far fewer grievances than he wrote and believes Defendants were destroying his grievances or thwarting his access to the grievance procedure.

**Analysis.** Plaintiff states claims against Defendants under several Eighth Amendment legal theories, including *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016) (interference with orders of medical providers); *White v. Hefel*, 875 F.3d 350, 358 (7th Cir. 2017) (sadistic use of force to cause harm); *Stewart v. Estate of Mesrobian*, 559 F. App'x 543,

548 (7th Cir. 2014) (deliberate indifference to painful handcuffs); *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) (malicious infliction of pain), and perhaps others, and under the First Amendment, *Dobbey v. IDOC*, 574 F.3d 443, 446 (7th Cir. 2009); *Daugherty v. Harrington*, 906 F.3d 606, 610 (7th Cir. 2018); *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015).

Plaintiff also pursues a claim for intentional infliction of emotional distress under Illinois law. He has stated such a claim. *McGreal v. Village of Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017).

**IT IS THEREFORE ORDERED:**

1. **Upon merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds Plaintiff states First and Eighth Amendment claims, and an Illinois law intentional infliction of emotional distress claim, against Defendants. Any other claims and Defendants shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown, or pursuant to Federal Rule of Civil Procedure 15.**

2. **This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendant(s) before filing any motions, to give notice to said Defendant and an opportunity to respond to any motions. Motions filed before counsel has filed an appearance on behalf of Defendant will be denied as premature. Plaintiff need not submit any evidence to the Court now, unless otherwise directed by the Court.**

3. **The Court will attempt service on Defendant by mailing Defendant a waiver of service. Defendant has 60 days from the date the waiver is sent to file an answer. If Defendant has not answered or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendant has been served, the Court will enter an order setting discovery and dispositive motion deadlines.**

4. **For a named Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address will provide to the clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information will be used only for effectuating service. Documentation of forwarding addresses shall**

be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5. This district uses electronic filing, so, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff. Plaintiff need not mail copies of motions and other papers to defense counsel that Plaintiff has filed with the Clerk. But this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the clerk. Plaintiff must mail discovery requests and responses directly to defense counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until defense counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

6. Defense counsel is hereby granted leave to depose Plaintiff and shall arrange the time for the deposition.

7. Plaintiff shall immediately notify the Court, in writing, of any change in mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

8. If a Defendant fails to sign and return a waiver of service to the clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require said Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

9. The Clerk is directed to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

Entered this 12th day of November, 2025.

*s/Michael M. Mihm*
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE